ROBERT L. BLAND, Judge.
In this proceeding claimant B. E. Fisher seeks to obtain an award against the board of control of West Virginia for the balance of money which he maintains is due to him under the terms and provisions of a certain written contract made and entered into by and between himself and said board, bearing date on the 30th day of October, in the year 1947, whereby he agreed to move six buildings then located at the TNT plant at Point Pleasant, West Virginia, to Lakin, West Virginia, and for the further sum of money claimed to be due and unpaid to him for furnishing additional material and doing extra work, not included in said written contract.
The facts developed upon the investigation and hearing of the claimant’s case may be briefly stated as follows:
The Lakin state hospital, an institution for the care and treatment of mentally ill persons of the negro race, is located at Lakin, West Virginia. The hospital was in need of further *163 and additional housing facilities. The board of control was informed in August or September of 1947 that there were several buildings at the TNT plant, near Point Pleasant, on which the state of West Virginia had a prior claim, and that if the board would visit the plant and confer with the officials there, it would be possible to acquire such of the buildings as might be deemed necessary for practically nothing. Such visit was made and six houses purchased at a cost of $235.00. The hoard was then confronted with the problem of transporting the buildings so purchased to the Lakin institution, possibly three miles distant from the TNT plant. The Point Pleasant Products Company submitted a bid to remove the buildings to Lakin and erect them on such site as might be designated for the sum of $12,000.00. Claimant B. E. Fisher, residing in Charleston, West Virginia, had been engaged in removing and transporting houses for many years. The board of control, acting by and through its general engineer R. G. Hanlen, duly authorized for the purpose, visited said Fisher and requested him to submit a bid for transporting the houses from their then location at the TNT plant to the Lakin institution. In order that he might better familiarize himself with what he would be required to do he was asked' to visit the government project in Mason county. This he did. The buildings purchased by the board of control were pointed out to him and he was told what was desired to be done in respect to the removal of said buildings from the TNT plant to the Lakin hospital. With such knowledge so acquired after personal investigation said Fisher seemingly with the aid of the board’s general engineer, at Fisher’s office in the city of Charleston, had a secretary to address a letter to the board of control setting forth the terms and conditions on which he would do the work, for the sum of $12,434.25. This proposition was $434.25 in excess of the bid submitted by the Point Pleasant Products Company. The Products Company by its bid for the work only agreed to bring the pipes and utilities to within three feet of the buildings. Fisher, however, by his bid proposed to bring said pipes and utilities into the buildings. For this reason the board of control accepted the bid submitted by Fisher. The board of control thereupon, by Joseph Z. Terrell, its then president, and Dell *164 White, its secretary, endorsed on said written proposition its acceptance and approval thereof. The bid in writing, so submitted by Fisher to do the work in question, by such acceptance and approval thereupon became and was a binding contract in writing. Although the board of control might have had the attorney general or any one of his several assistants, men learned in the law and trained for such purposes, or even Mr. Trotter, its most capable treasurer and an able lawyer, to prepare the contract, saw fit to accept and rely upon a paper written by laymen. To say the least the contract is a very poor instrument when so much money is involved, and has doubtless been the chief source and trouble for the confusion and misunderstanding that thereafter ensued between claimant and the board of control.
This contract contams this provision: “The State Board of Control agrees to furnish as many as twelve prison laborers to dig ditches, footers, etc., if needed.” It further provided: “If this job be awarded me, work will start on or by November 5, 1947, and be completed on or by November 30, 1947. Unless the required materials can not be purchased immediately.” Work was begun within a reasonable time and the buildings transported from the TNT plant to Lakin hospital promptly and there placed upon locations designated by persons representing the board of control.
Due to conditions incident to world war II Fisher experienced much difficulty in obtaining necessary materials for use in the work and on this account progress was often slow. However, at all times when weather conditions were favorable and materials available laborers provided by Fisher were at work on the job. Fisher, himself, by reason of the state of his health, found it necessary to sojourn in Florida for a time. During his absence his representatives were proceeding with the work at the hospital premises. It is, we think, very satisfactorily shown that the board of control did not at any time furnish twelve prison laborers to do the work specified to be done by them in the contract. At no time were more than eight of these prisoners engaged in the work which they were sup *165 posed to do, and finally they discontinued work entirely, thus necessitating Fisher himself to provide labor to perform the work which should have been done by prison laborers. Mr. Hanlen, the general engineer for the board, had many important duties to perform and was only at the Lakin hospital periodically, but during such visits he could or should have seen the progress of the work being done by Fisher. Officials at the Lakin hospital were ambitious and desirous of having things done and performed, making no allowance for the inability of claimant to obtain materials impossible to get by reason of war conditions. Ultimately its financial secretary addressed a communication to the board of control making complaint of what was alleged the slow progress of the work and asking that the contract be terminated. During the progress of the work the board of control paid to Fisher the sum of $10,000 under the terms of the written contract.
Under date of April 11, 1949, Joseph Z. Terrell, president of the board of control, addressed a communication to Fisher advising him that the written contract was being cancelled for reasons in said letter contained. No other or further payment was made by the board to Fisher under the terms of said written contract. The work provided by said written contract to be done by Fisher was performed by him, notwithstanding such delays as occurred from time to time in its necessary performance. In addition to such work as was done by Fisher under the contract in writing he did, at the special instance and request of officers and agents of the board of control, furnish the following material and did the following work:
15 Window Frames at $7.50 each .$112.50
15 Windows.-.— 119.38
Extra wiring on cafeteria . '... 93.30
Filling 500 cubic yards of dirt inside of building 500.00
Digging ditches, footers, etc. (which was intended to be done by prison labor) _ 250.00
It is apparent to the members of the court that the state has received the benefit of all of this additional work not required to be done under the written contract. The officers of the *166 Lakin hospital knew that this work was being done by Fisher. They knew also that it would not have been done by him if he had not been required to by persons representing the board of control who authorized it. The state cannot receive this benefit and deny its responsibility to pay for it. The probative value of the evidence contained in an enormous transcript, embracing approximately four hundred pages, discloses this fact. The great weight of the evidence supports the claim made by Fisher for the balance due to him under the terms of the written contract and the great weight of the evidence properly analyzed supports his contention that he did the extra work in controversy and for which he has not been paid.
In claim No. 534, LeRoy Roberts v. State Board of Control, 4 Ct. Claims (W. Va.) 235, we approved a claim for work done at Concord College for which payment had been denied by the board of control because of what was contended to be the absence of a contract duly authorizing such work. This claim was ratified by the Legislature and promptly and unhesitatingly paid by the auditor. In that case we held as follows:
“Pursuant to the purpose and spirit of the act of the Legislature creating the state court of claims, an award may be made for the payment of a claim against the state when the peculiar facts supporting such claim show it to be just and meritorious and for which the state has received distinct value and benefit.”
The confusion and misunderstanding which has caused so much trouble in this case is largely due to the fact that there have been too many bosses, and in the last analysis the fact remains that the state of West Virginia has received the benefit of the claimant’s work and should in equity and good conscience pay for it.
The president of the board of control could not arbitrarily terminate the board’s contract with Fisher, and the letter which he addressed to Fisher attempting to do so was wholly abortive.
*167 In view of the persuasive influence of the convincing record made upon the investigation of the claim in question, all three members of the court are of opinion and now find that claimant discharged the terms of his contract in writing with the board of control and now make an award in his favor for the sum of two thousand four hundred thirty-four dollars and twenty-five cents ($2,434.25) and a majority of the court do make a further award in favor of claimant for the sum of one thousand seventy-five dollars and eighteen cents ($1,075.18) for extra work and material furnished and performed at the Lakin state hospital as hereinbefore set out.